**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Finn MacCool, et al., | No. CV-14-00803-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Pending before the Court are: (1) Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") (Doc. 4); (2) Plaintiffs' Motion to File a Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure 15(a)(2) (Doc. 11); and (3) Plaintiffs' lodged TAC pursuant to LRCiv 15.1(b) (Docs. 18, 18-1). The Court notes that Plaintiffs also filed and later withdrew a Motion to File a TAC pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). (Docs. 21, 25). The Court will: (1) grant Plaintiffs' Motion to File a TAC; (2) strike Plaintiffs' lodged TAC; and (3) deny Defendants' Motion to Dismiss as moot for the following reasons.

## I.   BACKGROUND

Finn MacCool ("Finn") was diagnosed with Diabetes Mellitus Type 2 ("DM-2") and hypertension during the time he was an inmate housed by the New Jersey Department of Corrections. (Doc. 1-3 at 41). While in New Jersey, Finn's DM-2 and hypertension were "well-controlled." (*Id.*). In June 2011, Finn was transferred to the custody of the Arizona Department of Corrections ("ADC") and housed at the Eyman Complex-Browning Unit ("Eyman") from June 2, 2011 until April 15, 2012. (*Id.* at 38).

Upon Finn's arrival to Eyman, his medication regimen was changed and both insulin therapy and daily monitoring were discontinued. (*Id.* at 42).

While housed at Eyman, Finn experienced nausea, headaches, vomiting, and blurry vision. (*Id.*). James Baird, M.D. ("Dr. Baird"), Finn's primary treating physician at Eyman (*Id.* at 38), attributed Finn's symptoms to "food poisoning, flu, or migraine headaches." (*Id.* at 42). On August 20, 2011, an optometrist examined Finn and recommended that Dr. Baird "'get control' of Finn's blood pressure and blood sugar and get a 'retina consult ASAP.'" (*Id.*). Dr. Baird did not institute tighter monitoring of Finn's blood sugar or blood pressure and Finn's "blood pressure and blood sugar remained poorly controlled." (*Id.*). In the following eight months, Finn's health deteriorated. (*See Id.* at 42-43).

On April 15, 2012, Finn was transferred to ADC's Lewis Complex-Buckley Unit ("Lewis") where he remained until September 4, 2012. (*Id.* at 37-38). Upon Finn's transfer to Lewis, he was "essentially wheelchair bound and legally blind." (*Id.* at 44). At Lewis, a Defendant referred to in Plaintiffs' SAC as "CO-III Lamb" "refused multiple inmate letters and Health Needs Requests from Finn for accommodation under the Americans with Disability Act (ADA)." (*Id.*). CO-III Lamb denied Finn's request for an ADA porter because "he could have his 'cellie' write for him" and told Finn that he did not need a physician-ordered wheelchair because "he could find a spare wheelchair and get other inmates to push him or help him walk." (*Id.*). Finn relied on other inmates to get to and from meals and, between April and July of 2012, "he was found on multiple occasions in his cell near comatose state, unable to walk and unconscious." (*Id.*). On September 4, 2012, Finn was rushed to Tempe St. Luke's Hospital for end-stage renal disease and a heart attack. (*Id.*). Finn has not returned to Lewis and, instead, has remained in Tucson-Rincon's Health Unit or in hospitals in Phoenix and Tucson. (*Id.*).

During the time Finn was housed by the ADC, ADC Director Charles Ryan ("Director Ryan") was responsible for the overall operation of both Eyman and Lewis. (*Id.* at 38). Also during this time, Dr. Michael Adu-Tutu ("Dr. Adu-Tutu") was the Health

1 Services Division Director of the ADC and "was responsible for overseeing all health
2 care services of [the ADC] and for coordinating medical and mental health services for
3 all inmates, including Finn." (*Id.*). Both Ryan and Adu-Tutu knew of failures in care and
4 "needs of inmate[s] like [Finn] suffering from chronic diseases, specifically diabetes and
5 hypertension." (*Id.* at 43).

6 On August 9, 2012, Plaintiffs filed a Complaint against Defendants in Maricopa County Superior Court ("Superior Court"). (*See* Doc. 1-2). Between August 2012 and April 2014, Plaintiffs filed a First Amended Complaint (Doc. 1-3 at 1) and, later, the Superior Court granted Plaintiffs' Motion to File a SAC (*Id.* at 13). Plaintiffs' SAC was filed on October 1, 2013 (*Id.* at 37) and served to Defendants by April 3, 2014 (Doc. 1-4 at 22-51). Additionally, during this time period, the Superior Court granted Plaintiffs' motions for extension of time to serve process on Defendants. (Docs. 1-2 at 22, 1-3 at 21, 1-4 at 4). On April 16, 2014, Defendants removed the case to this Court. (Doc. 1).

14 On May 19, 2014, Plaintiffs filed a Motion to File a TAC (Doc. 11) and, a lodged TAC (Doc. 18) pursuant to LRCiv 15.1(b). Plaintiffs' lodged TAC asserts factual allegations in support of four causes of action: (1) medical malpractice against the State of Arizona as Dr. Baird's employer; (2) negligence and gross negligence against the State of Arizona based on the actions and inactions of Director Ryan and Dr. Adu-Tutu; (3) violations of 42 U.S.C. § 1983 against Dr. Baird, Dr. Adu-Tutu, Director Ryan, and CO-III Lamb; and (4) violations of the ADA, 42 U.S.C. § 12102 and the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 705(20)(B) against CO-III Lamb and Dr. Baird, both individually and officially, as well as the State of Arizona. (Doc. 18-1 at 12-17).

**II.    MOTION TO FILE A THIRD AMENDED COMPLAINT**

    **A.    LEGAL STANDARD**

A party may amend a pleading once as a matter of course within 21 days after serving it or within 21 days of service of, among others, a Federal Rule of Civil Procedure 12(b)(6) motion. Fed. R. Civ. P. 15(a)(1). In all other circumstances, a party must seek leave to amend from the court. Fed. R. Civ. P. 15(a)(2). "The court should

freely give leave when justice so requires." *Id.* In determining whether to grant a motion to amend, a court should consider five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). The most important of these factors is prejudice to the opposing party. *U.S. v. Pend Oreille Public Utility Dist., No. 1*, 926 F.2d 1502, 1511 (9th Cir. 1991). "Significantly, '[t]he party opposing amendments bears the burden of showing prejudice,' futility, or one of the other permissible reasons for denying a motion to amend." *Farina v. Compuware Corp.*, 256 F. Supp. 2d 1033, 1060 (D. Ariz. 2003) (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987)).

### B. ANALYSIS

Defendants argue that the Court should not grant Plaintiffs' Motion to File a TAC because of: (1) prior amendments; (2) undue delay; and (3) futility. (Doc. 19 at 2). Defendants have not argued that Plaintiffs acted in bad faith in requesting to amend their SAC. (*Id.*). Nor have Defendants argued they will be prejudiced if the Court allows Plaintiffs to amend their Complaint (*id.*), which is the most important factor to the Court's analysis, *Pend Oreille*, 926 F.2d at 1511. Because it is Defendants' burden to show why the Court should not grant Plaintiffs' Motion to File a TAC, the Court will only examine whether granting Plaintiffs' Motion to File a TAC is prohibited by: (1) prior amendments; (2) undue delay; or (3) futility.

#### 1. Prior Amendments

Defendants' first argument is that the Court should deny Plaintiffs' Motion to File a TAC because of previous amendments to the Complaint and First Amended Complaint. (Doc. 19 at 2).

The Court's discretion to deny an amendment is "particularly broad" where a plaintiff has previously amended his complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). The presence of prior amendments may persuade a court to deny leave, even in absence of the four other factors "when the movant present[s]

1 no new facts but only new theories and provide[s] no satisfactory explanation for his
2 failure to fully develop his contentions originally." *Id.* at 374.

3       While Plaintiffs have made previous amendments to *filed* complaints, the SAC
4 was the only complaint *served* upon Defendants. (Doc. 22 at 3). Additionally, Plaintiffs'
5 stated purpose in amending the SAC is to "clarify issues raised in Defendants' [Motion to
6 Dismiss]." (Doc. 11 at 3). In achieving this purpose, Plaintiffs allege new facts in the
7 lodged TAC to support their claims. Because this is the first amendment requested since
8 Defendants were served and Plaintiffs allege new facts to support their claims, this factor
9 does not weigh against granting Plaintiffs' Motion to File a TAC.

10       **2.    Undue Delay**

11       Defendants' second argument is that the Court should deny Plaintiffs' Motion to
12 File a TAC because the "19+ months" delay between filing the original Complaint and
13 service of the SAC created an undue delay. (Doc. 19 at 2).

14       By itself, undue delay is insufficient to prevent a court from granting leave to
15 amend a complaint. *Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973) (noting
16 that refusing an amendment solely because of delay does not promote any sound judicial
17 policy); *DCD Programs*, 833 F.2d at 186 ("delay, by itself, is insufficient to justify denial
18 of leave to amend"). In evaluating undue delay, a court considers "whether the moving
19 party knew or should have known the facts and theories raised by the amendment in the
20 original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). A
21 court should also consider whether "permitting an amendment . . . would produce an
22 undue delay in the litigation." *Id.* at 1387.

23       Plaintiffs attribute delays between filing the Complaint and serving the SAC to
24 Finn's attempts to exhaust his grievances within the ADC which were interrupted by
25 Finn's illnesses and transfers to various hospitals. (Doc. 22 at 3). Each extension of time
26 to serve Defendants was judicially-ordered for good cause in Superior Court. (Docs. 1-2
27 at 22, 1-3 at 21, 1-4 at 4). Additionally, this Court has not yet held a Federal Rule of Civil
28 Procedure 16 scheduling conference, and an amendment would not cause a delay in the

proceedings. Accordingly, this factor does not weigh against granting Plaintiffs' Motion to File a TAC.

### 3. Futility

Defendants' third argument is that the Court should deny Plaintiffs' Motion to File a TAC because the lodged TAC is futile. (Doc. 19 at 2).

Futility alone is enough to deny a motion for leave to amend. *Nunes*, 375 F.3d at 808. A proposed amendment is futile only if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Additionally, futility may be found where proposed amendments are "either duplicative of existing claims or patently frivolous, or both." *Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995). The party opposing amendment bears the burden of proving futility. *Rodriguez v. City of Phoenix*, No. CV-11-01992-PHX-JAT, 2014 WL 1053602, at \*3 (D. Ariz. Mar. 19, 2014).

Defendants argue that Plaintiffs' lodged TAC is futile because: (1) "Count Three reasserts the civil rights claims under 42 U.S.C. § 1983 against supervisors [Director] Ryan and [Dr.] Adu-Tutu despite there being no allegations supporting supervisor liability" and (2) "Count Four introduces a new theory of recovery based on the [ADA] and [RA]. But the Ninth Circuit has stated that § 1983 liability cannot be imposed for ADA violations." (Doc. 19 at 2-3). In their Response to Plaintiffs' Motion to File a TAC, Defendants also invite the Court to evaluate arguments made in their Motion to Dismiss within the futility context for Plaintiffs' lodged TAC. The Court declines this invitation and will only evaluate the two aforementioned futility arguments that were explicitly referenced in Defendants' Response to the Plaintiffs' Motion to File a TAC.

#### a. Count Three Futility

Defendants argue that reasserted civil rights claims under 42 U.S.C. § 1983 in Count Three against Director Ryan and Dr. Adu-Tutu are futile because there are "no allegations supporting supervisor liability." (*Id.* at 2).

A supervisor may be individually liable under § 1983 "if there exists either: (1) his

- 6 -

or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001). "Acquiescence or culpable indifference may suffice to show that a supervisor personally played a role in the alleged constitutional violations." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (internal quotation marks omitted). A supervisor is culpably or deliberately indifferent if he is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

In *Ashcroft v. Iqbal*, the Supreme Court addressed supervisor liability under the context of § 1983. 556 U.S. 662, 675-78 (2009). The Supreme Court noted that since "[g]overnment officials may not be held liable for unconstitutional conduct of their subordinates . . . a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676. The Supreme Court went on to reject that "a supervisor's mere knowledge of his subordinate's actions is sufficient to allege § 1983 liability against a supervisor in his individual capacity." *Id.* at 677.

The Ninth Circuit recently addressed the post-*Iqbal* pleading standard for supervisory liability holding that "[t]he Supreme Court's decision in *Iqbal*, did not alter the substantive requirements for supervisory liability claims in an unconstitutional conditions of confinement case under the Eighth and Fourteenth Amendments where deliberate indifference is alleged." *Starr,* 652 F.3d at 1217. In *Starr*, the Ninth Circuit concluded that "a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Id.* at 1207. There, the plaintiff brought Eighth Amendment claims against a sheriff in his individual capacity for his role as a supervisor of the detention facility where plaintiff was held. *Id.* at 1204-05. Because

the plaintiff pleaded that the sheriff was given several reports which indicated systematic problems in his county jails and did not take action to rectify these problems despite the reports, the Ninth Circuit held that the complaint was adequate to withstand a motion to dismiss. *Id.* at 1208. Consequently, the allegations of the reports and of the defendant's inaction were sufficient to state a claim for supervisory liability. *Id.*

Here, the Plaintiffs attempt to bring an Eighth Amendment claim in their lodged TAC against Director Ryan and Dr. Adu-Tutu in their individual capacity and "as the highest ranking supervisors, respectively, in [the] ADC and its Health Division." (Doc. 18-1 at 15). As in *Starr*, Plaintiffs allege reports from ADC staff warning Director Ryan and Dr. Adu-Tutu about the type of unreasonable treatment that inmates like Finn were receiving. (*Id.* at 7). Plaintiffs further allege that the lack of a strategy to remedy such "systemic failures" led to Finn's poor health conditions. (*Id.*). Based on the pleading standard set forth in *Starr*, Plaintiffs have alleged sufficient facts linking both Director Ryan and Dr. Adu-Tutu to a § 1983 violation. Since Plaintiffs have met the *Starr* pleading standard, their § 1983 supervisory liability claims against both Director Ryan and Dr. Adu-Tutu in their individual capacities are not futile.

### b. Count Four Futility

Defendants make a general futility argument that amending the SAC to include ADA and RA claims against CO-III Lamb and Dr. Baird would be futile because "§1983 liability cannot be imposed for ADA violations." (Doc. 19 at 3).

### i. ADA and RA Violations in Official Capacity

Plaintiffs allege in their lodged TAC that CO-III Lamb and Dr. Baird are "liable in their . . . official capacities to Finn for damages from Defendant [CO-III] Lamb's violations of the ADA and the [RA]." (Doc. 18-1 at 17).

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A 'public entity' is "any State or local

government; [or] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government . . . ." 42 U.S.C. § 12131. To state an ADA claim, a plaintiff must show that "(1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). The term 'qualified individual with a disability' means:

> an individual with a disability who, with or without reasonable modifications to rules, policies or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). A disability within the meaning of the statute is a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102.

The Ninth Circuit has found that "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical malpractice.")).

The RA is "materially identical and the model for the ADA, except limited to programs that receive federal financial assistance." *Armstrong v. Davis*, 275 F.3d 849, 862 n.17 (9th Cir. 2001) (internal quotation marks omitted). Title II of the ADA was expressly modeled after § 504 of the RA. *Zukle v. Regents of the University of California*, 166 F.3d 1041, 1045 (9th Cir. 1999). Additionally, because the ADA has a broader scope, the Ninth Circuit analyzes both Acts under an ADA standard. *See id.* at n.11 ("There is no significant difference in analysis of the rights and obligations created by the ADA and the [RA].").

1  Plaintiffs' lodged TAC includes facts that Finn was "blind" and "wheelchair 
2 bound" making him an "otherwise qualified individual" for the purposes of bringing the
3 ADA and RA claims. (Doc. 18-1 at 16). Plaintiffs allege that "CO-III Lamb's conduct
4 violated the ADA . . . because she ignored Finn's need and requests for medical
5 assistance and for assistance in obtaining services to which he was entitled and needed as
6 a blind, wheelchair bound individual." (*Id.* at 17). Plaintiffs further allege that CO-III
7 Lamb "treated [Finn] with hostility, disdain, and anger because of his disability and the
8 additional work his status caused her." (*Id.* at 16). Taking Plaintiffs' factual allegations to
9 be true, Plaintiffs make a valid claim under the ADA that Finn, a qualified individual
10 with a disability, was treated with hostility and disdain *because* of his disability. As a
11 result, Plaintiffs' proposed amendments in the lodged TAC to include ADA and RA
12 claims against CO-III Lamb in her official capacity are not futile.
13  Plaintiffs also allege that Dr. Baird violated Finn's rights under the ADA and the
14 RA because his "failure to treat deprived Finn of medical services." (*Id.* at 17). Here,
15 Plaintiffs do not set forth any facts supporting a claim that Finn was subjected to any
16 intentional discrimination *because* of his disability nor was he excluded from
17 participation in any prison program or activity. Improper medical treatment is not the
18 same as discrimination under the ADA. As a result, Plaintiffs' proposed amendments in
19 their lodged TAC to include ADA and RA claims against Dr. Baird in his official
20 capacity are futile. *See Hewitt v. Luis*, 2013 WL 4702266, at *10 (Dist. Nev. July 2,
21 2013) (granting summary judgment against plaintiff's ADA claim because "plaintiff
22 merely allege[d] a difference of opinion regarding proper medical treatment for plaintiff's
23 back and leg pain–not discrimination under the ADA"); *and Calloway v. Contra Costa*
24 *County Jail Correctional Officers*, 2007 WL 134581, at *34 (N.D. Cal. Jan. 16, 2007)
25 (denying presence of an actionable ADA/RA where the defendant's inadequate medical
26 treatment denied the sick plaintiff an opportunity to engage in regular prison life).
27  Plaintiffs' ADA and RA claims against CO-III Lamb in her official capacity are
28 not futile while ADA and RA claims against Dr. Baird are futile.

      **ii.**  **ADA and RA Violations in Individual Capacity**

Plaintiffs allege in their lodged TAC that CO-III Lamb and Dr. Baird are "liable in their individual . . . capacities to Finn for damages from Defendant [CO-III] Lamb's violations of the ADA and the [RA]." (Doc. 18-1 at 17).

Individuals may *only* be sued under the ADA in their official, rather than their individual capacities. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (denying plaintiff's ability to sue state officials in their individual capacities based on Title II of the ADA). "Likewise, the [RA] does not allow for suits against officers in their individual capacities." *Castle v. Eurofresh, Inc.*, No. CV 09-8114-PCT-MHM, 2011 WL 53063, at *5 (D. Ariz. Jan. 7, 2011).

Because Plaintiffs may not sue individuals for violations of the ADA or RA in their individual capacities, Plaintiffs' proposed amendments in their lodged TAC to include these claims against CO-III Lamb and Dr. Baird are futile.

### III. MOTION TO DISMISS

Because Plaintiffs may file a TAC, Defendants' motion to dismiss is now moot. The complaint that was the focus of the motion will be superseded. *See Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) ("[I]t is well-established that an amended-complaint superseded the original, the latter being treated thereafter as non-existent.") (internal quotation marks omitted). As a result, the motion to dismiss is denied without prejudice.

### IV. CONCLUSION

Based upon the foregoing, the factors set forth by the Ninth Circuit weigh in favor of allowing Plaintiffs to amend the complaint. However, because it would be futile for Plaintiffs to amend their SAC to include ADA/RA violations by CO-III Lamb in her individual capacity as well as Dr. Baird in both his official and individual capacities, Plaintiffs' lodged TAC is stricken and Plaintiffs are allowed to file a TAC consistent with this Order within ten days.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss the SAC (Doc. 4) is **DENIED** as moot without prejudice.[1]

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to File a Third Amended Complaint (Doc. 11) is **GRANTED**; however, Plaintiffs' lodged Third Amended Complaint (Doc. 18-1) is **STRICKEN.** Plaintiffs shall file a Third Amended Complaint in accordance with this Order within ten (10) days of the filing of this Order; if Plaintiffs fail to file a Third Amended Complaint within this deadline, then Defendants may re-file the Motion to Dismiss that the Court has denied without prejudice within fifteen (15) days of the date of this Order.

Dated this 26th day of June, 2014.

James A. Teilborg
Senior United States District Judge

---

[1] Because the Court has not reached the merits of the motion to dismiss, the Court denies Plaintiffs' request for oral argument on the motion to dismiss as also moot.

- 12 -